IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> MOHAMAD JAMAL KHWEIS, <br><br> *Defendant.* | Criminal Action No. 1:16-cr-143 <br> Hon. Liam O'Grady |

## ORDER

Pending before the Court is the Government's motion to exclude expert testimony from Dr. Anita Boss. (Dkt. No. 178). Defendant filed his initial expert disclosure in the form of a letter to the Court on May 20, 2017. The letter stated that Dr. Boss would testify as to "the current scientific literature on *Miranda* rights waivers and confessions" as well as the unreliability of confessions and related topics (broadly referred to as "false confessions" for ease of reference). Dkt. No. 158. On May 24, the Court gave the parties notice that it wished to discuss the admissibility of this evidence at the May 26 motions hearing. Dkt. No. 169. At that hearing, the Court instructed the Defendant to proffer additional information on the scope of Dr. Boss's testimony. Defendant did so in the form of a Supplemental Expert Disclosure, which it submitted on May 29, 2017. The Government filed the instant motion on the same day. For the reasons that follow, the Government's motion to exclude (Dkt. No. 178) is hereby GRANTED.

The supplemental expert disclosure has four sections that set forth the scope of Dr. Boss's proposed testimony. First, it cites various sources and anecdotal evidence to support the contention that "false confessions do occur." Second, the outline explains "how expert testimony can assist the layperson's understanding" by explaining why people might confess to

something they did not do. Third, the proffer indicates that Dr. Boss would discuss the "factors contributing to false confessions," which would include general behavioral and social sciences research, situational factors, and the confessor's personal characteristics. Fourth, the disclosure states that Dr. Boss would testify to "examples of laboratory studies" that would explain the bases for the professional study of false confessions. The supplemental disclosure concludes with a bibliography.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which allows for the admission of expert testimony if: (1) it is potentially helpful to the jury; (2) it is based on sufficient facts or data; (3) it is the product of reliable principles and methods; and (4) the testimony is applied to the facts of the case. Fed. R. Evid. 702. The Supreme Court has provided a judicial gloss for this rule in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).

The Fourth Circuit has interpreted *Daubert* as requiring a two-part test. *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995). First, the testimony must be supported by appropriate scientific knowledge, or validation; and second, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (internal quotations omitted). There are at least four factors to help the Court determine whether the first prong of this test is satisfied: "(1) whether the theory or technique used by the expert can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used; and (4) the degree of the method's or conclusion's acceptance within the relevant scientific community." *Id.* In determining whether the second prong has been met, the Court must be mindful of other evidentiary rules and Rule 403 in particular. *Id.*

At the end of the day, the trial judge maintains "a great deal of discretion is deciding whether to admit or exclude expert testimony." *Id.*

The Fourth Circuit has not directly opined on the admissibility of expert testimony regarding false confessions, but it has emphasized that "*Daubert* requires a nuanced, case-by-case analysis of whether the proposed expert testimony will assist the trier of fact." *United States v. Belyea*, 159 F. App'x 525, 529 (4th Cir. 2005). Thus, the admissibility of false-confession expert testimony is determined on a case-by-case basis rather than by categorical rule. *See id.* Nonetheless, most circuit courts to directly consider the admission of expert testimony on false confessions have determined that they are not admissible.[1] *See, e.g., United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014); *United States v. Benally*, 541 F.3d 990, 994 (10th Cir. 2008); *United States v. Dixon*, 261 F. App'x 800, 810 (5th Cir. 2008); *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003).

There are at least three key bases for these decisions. First, many courts have found that the science of false confessions is not reliable. *See, e.g.*, Mem. Op., *United States v. Yazzie*, No. 1:11-cr-01876-WJ Doc. 145 at 4–5 (D.N.M. Sept. 17, 2012). Indeed, there is no "known or potential error rate" that can be attributed to false confession studies. *Id.* Thus, while an expert may identify "risk factors," she cannot opine on the truthfulness of a defendant's testimony with any degree of certainty. *See id.* Second, courts often find that, even if the expert's science is sound, her research cannot be "connect[ed] to the . . . particulars of [the defendant's] case." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003). Finally, courts have found that allowing expert testimony on the truthfulness of a confession usurps the critical jury function of

---

[1] Applying Rule 702, a few circuit courts have allowed experts to testify on the issue of false confessions, however, they have only done so when the expert testimony related to the defendant's unique mental characteristics. *See United States v. Hall*, 93 F.3d 1337, 1343-45 (7th Cir. 1996) (reversing district court's exclusion of expert testimony when defendant suffered from a personality disorder); *United States v. Shay*, 57 F.3d 126, 133-34 (1st Cir. 1995) (reversing district court's exclusion of expert evidence where defendant suffered from Munchausen's Disease).

3

determining witness credibility. *See United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014). Under this rationale, the expert testimony is either unduly prejudicial, or otherwise unhelpful to the jury, "which can make its own determination of credibility." *Id.*

All three of these analytical bases are wholly applicable here. Primarily, upon consideration of the Government's motion, and for the reasons stated in open court, the Court finds that Dr. Boss's testimony is unreliable for the purposes of Rule 702. Although the Court recognizes the fact that false confessions do happen, there is simply no reliable science for determining how *likely* they are to happen. The fact that a "false" confession can only be proven false by some other evidence (often DNA-based evidence) merely confirms this conclusion. Thus, there is no effective control group for the studies cited by Dr. Boss because the experiments upon which this science relies can only be conducted on individuals who have been exonerated by separate means.

Next, there is no evidence that Dr. Boss will "reliably appl[y] [her] principles and methods to the facts of the case." Fed. R. Evid. 702(d). Indeed, there has been no suggestion that Dr. Boss knows the defendant or is familiar with his history. Thus, it would be impossible for her to "establish that [Khweis] was interrogated under circumstances that could produce a false confession." *Mamah*, 332 F.3d at 478. That is not to say that experts can never testify when they have not interviewed a defendant, however, the testimony and research must have some specific application to the case at hand. By way of illustration, Defendant's supplemental expert notice cites the "Central Park Jogger Case" from 1989 as clear evidence of the false-confession phenomenon. In that case, five defendants that confessed to a murder were later exonerated in 2001 by DNA evidence. But a false confession to a 1989 murder in New York City is a far cry from the FBI investigation into the Defendant's participation in an active

terrorist organization in the Middle East. They took place on different continents, at different times, by different law enforcement agencies, and the nature of the respective crimes was distinct. In short, without a more direct connection between Dr. Boss's research and the actual facts of this case, Rule 702(d) precludes the admission of her testimony.

Finally, the Court finds the admission of Dr. Boss's testimony would be unhelpful to the jury, which is fully capable of assessing the truthfulness of Khweis's alleged confession. On this score, the words of the Tenth Circuit properly summarize the issue. "Such testimony: (1) 'usurps a critical function of the jury'; (2) 'is not helpful to the jury, which can make its own determination of credibility'; and (3) when provided by 'impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury.'" *Hill*, 749 F.3d at 1258 (internal citations omitted).

For these reasons, and for good cause shown, the Government's motion to suppress is hereby GRANTED and Dr. Boss will not be permitted to testify as an expert at trial.

It is SO ORDERED.

Liam O'Grady
United States District Judge

June 2, 2017
Alexandria, Virginia