IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:16-cr-143 |
| | ) | Hon. Liam O'Grady |
| MOHAMAD JAMAL KHWEIS, | ) | |
| | ) | |
| *Defendant*. | ) | Sentencing: October 13, 2017 |

**GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION
AND NOTICE OF FORFEITURE HEARING**

The United States of America, by and through undersigned counsel, respectfully submits the following reply to the Defendant's Opposition to the Government's Motion for a Preliminary Order of Forfeiture. In his opposition, Mohamad Jamal Khweis ("the defendant") concedes forfeiture of the mobile phones and SIM/memory cards that were admitted into evidence at trial (Gov. Exs. 10, 11, 11A, 12, 13, and 14). *See* Dkt. No. 208 at 1. However, he now intends to contest forfeiture of 20,000 Iraqi Dinar; (Gov. Ex. 18); 285 Turkish Lira (Gov. Ex. 19); and $4,151.00 United States dollars (Gov. Ex. 20) (collectively, "the currency") notwithstanding the fact that all of the currency was found on him in connection with his capture by Kurdish Peshmerga forces in Northern Iraq after he spent two and a half months as an ISIS member in Syria and Iraq, and despite having now been convicted by a jury of multiple terrorism-related violations of 18 U.S.C. § 2339B, as well as a violation of 18 U.S.C. § 924(c)(1)(A).

In opposing the government's motion, the defendant makes two principal arguments: (1) that the currency was "lawfully-earned" money taken into, and then out of, ISIS-controlled territory in Syria and Iraq and was not used, or intended to be used, for unlawful activity, and therefore does not satisfy the elements of either clause (ii) or (iii) of 18 U.S.C. § 981(a)(1)(G);

and (2) that clauses (i) and (iv) of 18 U.S.C. § 981(a)(1)(G) are unconstitutionally broad and vague, violating due process. Both of these arguments are meritless, and the defendant's second argument is entirely devoid of any applicable judicial precedent.

I. **THE EVIDENCE ADMITTED DURING TRIAL SUPPORTS FORFEITURE OF THE CURRENCY UNDER EITHER CLAUSE (ii) OR (iii) OF 18 U.S.C. § 981(a)(1)(G)**

The evidence admitted during trial is more than sufficient to prove by a preponderance of evidence that the currency is subject to forfeiture under either 18 U.S.C. § 981(a)(1)(G)(ii) or (iii). Before he left the United States, the defendant quit his job, closed online accounts, concealed and lied to his family about where he was going, and sold his car just days before his departure – even admitting that he took the proceeds of that sale with him overseas. *See* Trial Transcript 680:11 – 682:16; 934:10-22; 938:8-14; Gov. Ex. 79. The defendant departed on December 16, 2015 by using a one-way ticket, in which he listed a non-working phone number on the reservation, with the intent to travel to ISIS-controlled territory in Syria and join a terrorist organization that he knew espoused violence. *See* Trial Transcript 529:4 – 531:8; 686:12 – 687:18; Gov. Exs. 49 and 49A. In fact, the defendant meticulously planned his travel and booked four separate one-way tickets before he departed the United States by using a newly established email account to facilitate his travel to ISIS. *See* Trial Transcript 683:24 – 684:9; 693:22 – 694:5. None of those four tickets involved a return flight to the United States. *Id.*

Employing a sophisticated scheme of tradecraft, the defendant took a circuitous route by traveling first to London (where he attempted to contact who he described as a pro-ISIS extremist cleric), followed by a short trip to Amsterdam (he thought it would make it look less suspicious to Turkish authorities if he traveled elsewhere in Europe first before traveling to Turkey), followed by a one-way ticket to Turkey. *See* Trial Transcript 698:15 – 699:13. He

even booked a one-way ticket to Greece before he left the United States, which is indicative of an attempt "to create an alibi or a way out" and mask his "actual intent for travel." *Id.* at 693:8 – 12. The defendant admitted to the FBI that he arrived in Turkey to contact ISIS recruiters/facilitators through social media and encrypted platforms who could smuggle him into Syria to join ISIS. *Id.* at 699:14 – 21. Given that the defendant arrived in Turkey on December 20, 2015, and stayed there until the end of December 2015 while he was seeking to travel to ISIS according to his own admission, it is hardly surprising that he possessed Turkish Lira when he was captured. *See id.* at 699:12 – 13; 1056:16-19.

Whether he used all of the currency as a member of ISIS in Syria and Iraq is irrelevant given that the trial record is replete with evidence that the defendant left the United States intending to join ISIS, knew that ISIS was a terrorist organization before he left (even admitting to the FBI that he knew, before he traveled to join ISIS, that ISIS claimed responsibility for the November 2015 Paris attacks and the execution of ISIS prisoners, including the burning of a Jordanian pilot), among other evidence. *Id.* at 526:15 – 20; 531:12 – 532:1. Additionally, the jury viewed cash withdrawal slips from the defendant, one of which was for $2,500 and dated five days before he traveled overseas, and another that was for $1,300 and dated the day before he left the United States intending to travel to ISIS-controlled territory. *See* Gov. Ex. 74.

There is absolutely no supporting evidence in this record, as the defendant claims, that the Iraqi currency was "lawfully-earned." *See* Dkt. No. 208 at 1. The jury heard testimony that the defendant admitted, while he was a member of ISIS in Iraq, that "each household was given a daily stipend or salary so they could purchase food and other items" and "[i]n addition to household salaries, each ISIS member was given a salary for their service." Trial Transcript 563:15 – 20. The defendant's ISIS intake form, which listed his mission as a "[f]ighter," also

3

indicated that he received an allowance or a stipend. *See* Gov. Ex. 30B; Trial Testimony 490:25 – 491:5. Furthermore, when asked whether the defendant stated that he gave anything to ISIS members, the jury heard testimony that "[h]e frequently gave money to other ISIS members." Trial Transcript 563:21 – 23.

Even more, the defendant himself admitted during cross-examination, after numerous attempts to minimize his conduct, that: (1) he asked individuals affiliated with ISIS, by using an encrypted social media application, whether he would have to pay those individuals to travel with them to ISIS-controlled territory in Syria; and (2) if those individuals told him that he needed to pay them for that specific purpose, he would have done so. *See* Trial Transcript 988:18 – 989:22. The defendant's unsupported claim that the government has not established the requisite statutory nexus between the currency and his conviction of terrorism-related offenses is baseless, and clearly ignores the testimony and evidence admitted at trial.

## II. CLAUSES (i) AND (iv) OF 18 U.S.C. § 981(a)(1)(G) ARE CONSTITUTIONAL

In the alternative, the defendant contends that clauses (i) and (iv) of 18 U.S.C. § 981(a)(1)(G), which authorize the forfeiture of "all assets of a person engaged in planning or perpetrating" any federal crime of terrorism or an action of international terrorism, are unconstitutional. Dkt No. 208 at 3. He makes a bare bones argument without citing any applicable precedent that, because those clauses allow the government, subject to certain conditions, "to take any asset, related or unrelated to the offense, of an individual who commits a federal terrorism offense," they are unconstitutionally broad and vague, violating due process. *Id.*

First, the Court need not even reach the merits of this argument given that the evidence admitted at trial establishes by a preponderance of the evidence, under either clause (ii) and/or

4

(iii) of 18 U.S.C. § 981(a)(1)(G), the existence of the statutorily required nexus between the currency and the terrorism-related crimes of which the defendant was found guilty. Simply put, the inquiry can end there and no further analysis is required given the above-described testimony and documentary evidence presented to the jury.

Second, even if the Court were to entertain this argument, the fact that forfeiture is authorized for assets irrespective of whether they are related to an offense does not offend the Constitution. As an initial matter, substantial deference is owed to Congress's judgment that a defendant convicted of terrorist offenses should be required, as a measure of punishment, to forfeit property he owns regardless of whether the property was an instrumentality of or involved in his crimes. *See United States v. Bajakajian*, 524 U.S. 321, 336 (1998) (explaining that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," and that a reviewing court "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes" (quoting *Solem v. Helm*, 463 U.S. 277, 290 (1983)). *Cf. Holder* v. *Humanitarian Law Project*, 561 U.S. 1, 28 (2010) ("[T]he Government's interest in combating terrorism is an urgent objective of the highest order.").

For example, substitute assets may be forfeited pursuant to 21 U.S.C. § 853(p) (this provision was also set forth in the Superseding Indictment in this case), and there is no constitutional requirement of a nexus between the defendant's offense and the property to be forfeited. *See United States v. Smith*, 656 F.3d 821, 828 (8th Cir. 2011). As the *Smith* court observed:

> A constitutional nexus requirement for *all* property subject to forfeiture would render the forfeiture of substitute assets, by definition, unconstitutional. The statute is rationally related to legitimate "punitive, remedial, and corrective purposes," and it is therefore consistent with the

> Due Process Clause. *See United States v. Shepherd,* 171 Fed.Appx. 611, 616 (9th Cir. 2006); *cf. Libretti v. United States,* 516 U.S. 29, 47–48, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) (upholding criminal forfeiture of, *inter alia,* substitute property).

*Id.* Similarly, the forfeiture of assets of a defendant convicted of multiple terrorism offenses is rationally related to legitimate punitive and corrective purposes, and is therefore constitutional. *See United States v. Saade*, 2013 WL 6847034, at *1 (S.D.N.Y. Dec. 30, 2013) ("Given that this statute [referencing 18 U.S.C. § 981(a)(1)(G)(i)] is being invoked after defendant's conviction, and requires no connection between the property forfeited and defendant's crimes, such forfeiture can certainly be characterized as punitive.").

Moreover, the government is unaware of any successful constitutional challenges to 18 U.S.C. § 981(a)(1)(G)(i) and (iv), both of which have been in effect for over a decade. Nor is there any precedent – and the defendant cites none – suggesting that forfeiture of currency is categorically barred under either clause, unless the property is an instrumentality of or involved in the offense giving rise to forfeiture, particularly following a defendant's conviction of terrorism-related offenses. On the contrary, in *United States v. Saade*, for example, the Court denied the defendant's motion opposing the government's proposed preliminary order of forfeiture, which, pursuant to 18 U.S.C. § 981(a)(1)(G), sought various items of jewelry, gold wafers, several wristwatches, a cell phone, and approximately $13,831.29 worth of U.S. and Iraqi currency. 2013 WL 6847034, at *1. The defendant in that case was found guilty of terrorism-related offenses, including conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A. *Id.* Numerous items, including the U.S. and Iraqi currency, were seized from the defendant in Romania, where he was arrested, and from his safe deposit boxes. *Id.* at *3 n.1. In holding that 18 U.S.C. § 981(a)(1)(G)(i) does not violate the Eighth Amendment's Excessive Fines Clause, the *Saade* Court noted that "defendant's property is

6

subject to forfeiture because he was convicted of 'planning or perpetrating [two] Federal crime[s] of terrorism (as defined in [18 U.S.C. § ] 2332b(g)(5)) against the United States.'" and that "[b]oth statutes under which he was convicted were designed to criminalize precisely the activity in which he was engaged, to wit, conspiring to provide material support to terrorists and to acquire and transfer anti-aircraft missiles." *Id.* at \*2. In addition to providing, or attempting to provide, material support to ISIS, Khweis, similar to the defendant in *Saade*, was found guilty of conspiring to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B, which, like § 18 U.S.C. 2339A, also qualifies as a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5).

In his "kitchen sink" approach to opposing forfeiture of the currency, the defendant inexplicably cites to Justice Thomas' remarks in a statement respecting the denial of certiorari in *Leonard v. Texas*, 137 S. Ct. 847, 848 (2017), wherein the Justice notes his displeasure of what he perceived to be abuses that occurred in some civil forfeiture cases, and questions its constitutionality. *See* Dkt No. 208 at 3. However, this is a criminal case, not a civil one. The forfeitures discussed in that non-binding statement were *in rem* rather *in personam* criminal forfeitures against criminal defendants, like Mohamad Khweis, who were found guilty at trial after enjoying the protection of a panoply of constitutional safeguards.[1] Thus, the criticism is entirely inapposite here.

Finally, the defendant cites 18 U.S.C. § 983(c)(3), which requires the government to prove a substantial connection between the property to be forfeited and the offense if the theory

---

[1] *[I]n rem* forfeiture is a "confiscation[ ] of property rights based on improper use of the property, regardless of whether the owner has violated the law" while *in personam* forfeiture, which the government is invoking in seeking to forfeit the currency at issue here, is an "assessment[ ], whether monetary or in kind, to punish the property owner's criminal conduct." *Austin v. United States*, 509 U.S. 602, 624 (1993) (Scalia, J., concurring).

of forfeiture is that the property was used to commit or to facilitate the offense or was involved in the commission of the offense. *Id.* However, the theory of forfeiture under 18 U.S.C. § 981(a)(1)(G)(i) or (iv) is not a facilitating property theory, and because there is no nexus requirement in those portions of the statute, the defendant's implication that the government most prove a substantial connection between the property to be forfeited and the offense under either of those clauses is clearly incorrect. Nonetheless, the government has exercised considerable restraint here in seeking only the forfeiture of certain property that the defendant possessed when he was captured in Northern Iraq near ISIS-controlled territory. While 18 U.S.C. § 981(a)(1)(G)(i) and the defendant's multiple convictions under 18 U.S.C. § 2339B allow the government to seize *all* of the defendant's assets, foreign or domestic, whether the property was involved in the terrorism activity or not, the government is not seeking forfeiture of any other assets other than those identified in its motion for a preliminary order of forfeiture, which include the currency at issue. *See generally* Dkt No. 207.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court issue a preliminary order of forfeiture forfeiting the above-listed assets to the United States in advance of the sentencing hearing. For the Court's review and consideration, a proposed order was attached to the government's motion for preliminary order of forfeiture. *See* Dkt. No. 207, Ex. 1.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:     /s/
Raj Parekh, Trial Attorney
U.S. Department of Justice
Counterterrorism Section

By:     /s/
Dennis M. Fitzpatrick
Assistant U.S. Attorney
U.S. Attorney's Office

9

| | |
|---|---|
| National Security Division | Eastern District of Virginia |
| 950 Pennsylvania Ave., N.W. | 2100 Jamieson Avenue |
| Washington, D.C. 20530 | Alexandria, Virginia 22314 |
| Phone: (202) 616-2428 | Phone: (703) 299-3700 |
| raj.parekh@usdoj.gov | dennis.fitzpatrick@usdoj.gov |

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2017, I filed the foregoing with the Clerk of Court using the CM/Dkt system, which will send an electronic copy to all counsel of record in this matter.

By:           /s/
      Raj Parekh
      Special Assistant United States Attorney
      Attorney for the United States
      United States Attorney's Office
      2100 Jamieson Avenue
      Alexandria, VA  22314
      (703) 299-3700 (telephone)
      (703) 837-8242 (fax)
      raj.parekh@usdoj.gov