**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 1:16CR143** |
| | ) | |
| **MOHAMAD JAMAL KHWEIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR,
ALTERNATIVELY, A NEW TRIAL**

COMES NOW the Defendant, Mohamad Jamal Khweis, by counsel, and

respectfully renews his Motion under Fed. Crim. R. 29. Mr. Khweis asks the Court for an

Order granting a judgment of acquittal in favor of Mr. Khweis as to all charges, or

alternatively, for a new trial under Fed. Crim. R. 33 because the interest of justice so

requires.

**I.      Legal Standard**

The familiar standard for review of a defendant's claim that the evidence is

insufficient to sustain the jury's verdict of guilty is as follows: "the verdict of a jury must

be sustained if there is substantial evidence, taking the view most favorable to the

government, to support it." *Glasser v. United States*, 315 U.S. 60, 80 (1942) (emphasis

added); *United States v. Steed*, 674 F.2d 284, 286 (4th Cir.), cert. denied, 459 U.S. 829

(1982); *United States v. Sherman*, 421 F.2d 198, 199 (4th Cir.), cert. denied, 398 U.S.

914 (1970). However, even after viewing the evidence in the light most favorable to the

prosecution, the verdict should be set aside if the evidence still gives "equal or nearly

equal" support to a theory of guilt and a theory of innocence, because in that event, a

reasonable trier of fact "must necessarily" entertain reasonable doubt. *United States v. Santillana*, 604 F.3d 192, 195 (5th Cir. 2010). *See also United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002); *United States v. Andujar*, 49 F.3d 16, 20 (1st Cir. 1995); *United States v. Wright*, 835 F.2d 1245, 1249 (8th Cir. 1987); *Cosby v. Jones*, 682 F.2d 1373, 1383 (11th Cir. 1982).

The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 309 (1979). In that respect, the Constitution protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id*. at 315. A jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt. *See id*. at 317. However, such an occurrence has traditionally been deemed to require reversal of the conviction. *Id*. at 317.

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must not simply be to determine whether the jury was properly instructed, but instead to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 318. Courts can, and regularly do, gauge the sufficiency of the evidence without intruding into any legitimate domain of the trier of fact. *Id*. at 321.

On a Rule 33 Motion, a court may vacate any judgment and grant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Unlike a motion under Rule 29, the Court is not constrained to view the evidence in the light most favorable to the Government when deciding whether to grant a new trial under Rule 33. *See United States*

*v. Smith*, 623 F. Supp. 2d 693, 698 (W.D. Va. 2009) (quoting *United States v. Arrington*, 757 F.2d 1484 (4th Cir. 1985)).  Because the evidence was insufficient on all three charges as a matter of law and fact, this Honorable Court should vacate Mr. Khweis' convictions, or in the alternative, grant him a new trial.

**II.      Mr. Khweis must be acquitted of count three, or receive a new trial as a matter of law and fact.**

The Government's argument at trial on count three was essentially as follows: ISIS uses firearms to commit violent acts; the defendant knew ISIS uses firearms to commit violent acts; the defendant conspired to provide material support to ISIS; therefore, the defendant is responsible for his co-conspirators carrying firearms in furtherance of a crime of violence.[1]  *See* Trial Trans. pp. 1239-40, 1284-85.  In order to be sufficient, however, the evidence must have established that *an actual firearm* was *actually* used by a co-defendant to further an *actual predicate offense*.

Even taken in the light most favorable to the Government, the evidence is insufficient to support this conviction as a matter of law and fact, for four reasons.  One, there was no evidence that a co-conspirator possessed a firearm in furtherance of *this predicate offense,* namely, Mr. Khweis' agreement to provide material support.  Two, there was no evidence that the firearm in count three was actually a firearm – that it met the statutory definition of a firearm. Three, there was no independent corroboration of evidence, not even slight corroboration, to the defendant's statements on count three. Four, providing material support to a foreign terrorist organization is not a crime of violence.

---

[1] Only the term "co-defendant" is used in this case because Government's argument and the jury instructions were limited to *Pinkerton* liability.  T. T. at 1162, 1170-75.

***i.***     ***There was no evidence that Mr. Khweis or a co-conspirator possessed a firearm in furtherance of the specified predicate offense.***

Section 924(c) of Title 18 does not criminalize carrying firearms generally, or associating with others who generally carry firearms and generally commit violent acts. It criminalizes using or carrying firearms in furtherance of a specific predicate offense. The Government is not required to specify a predicate offense when indicting a defendant on an 18 U.S.C. 924(c) offense. *See United States v. Danzell*, No. 7:05CR00024, 2005 U.S. Dist. LEXIS 22011, at *4 (W.D. Va. Sep. 28, 2005). When it does, however, the Government may not then prove a different predicate offense at trial. *See United States v. Randall*, 171 F.3d 195 (4th Cir. 1999).

Once the Government specifies the predicate offense, the Government then "must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to *advance or promote* the criminal activity." *United States v. Khan*, 309 F. Supp. 2d 789, 825 (E.D. Va. 2004) (emphasis added)(citations omitted).

In interpreting this section, "courts have developed a non-exclusive list of factors to be considered in determining whether a sufficient nexus exists between possession of the weapon and the predicate offense. These factors include the type of weapon, the legality of its possession, the type of criminal activity conducted, and the time and circumstances under which the firearm was found." *Id.* (citing *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001); *United States v. Wahl*, 351 U.S. App. D.C. 284, 290

F.3d 370, 376 (D.C. Cir. 2002)); *see also United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002) (citing *United States v. Finley*, 245 F.3d 199, 202 (2d Cir. 2001)).

In this case, the Government specified the predicate offense as conspiracy to provide material support to a foreign terrorist organization. *Superseding Indictment*, ECF No. 72 at 4. Furthermore, there was no other evidence of any other specific crime of violence alleged, rather, only evidence that ISIS is generally a violent organization (an undisputed assertion). Therefore, in order for the evidence to be sufficient on Count III, the Government must prove that a co-conspirator, used or carried a firearm to advance or promote *Mr. Khweis' conspiracy to provide material support.* There was no evidence to this effect. The Government's evidence did not show that anyone carried a firearm in furtherance of Mr. Khweis' agreement to provide material support.

Taken in the light most favorable to the Government, the evidence showed that Mr. Khweis saw individuals carrying firearms while with ISIS and prior to joining ISIS, and he moved them around occasionally in the houses in which he stayed. Proving that ISIS generally carries firearms outside its houses shows only that firearms are generally present where criminal activity occurs, not that a co-conspirator used or carried a firearm to advance or promote Mr. Khweis' agreement to provide material support. *See United States v. Khan*, 309 F. Supp. 2d at 825 ("The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence."). Having guards with firearms outside their safehouses may advance ISIS' military objective generally, but there was no evidence that it advanced promoted Mr. Khweis' alleged agreement to provide himself.

None of the evidence at trial established that the use of these firearms was done to advance or promote Mr. Khweis' alleged agreement to provide himself as personnel, or services, to ISIS.  There was no evidence that the firearms advanced or promoted Mr. Khweis' alleged agreement to travel, there was no evidence they aided his alleged agreement to go grocery shopping, and no evidence that they advanced his alleged agreement to take out the trash or any other purported services.

In fact, in closing argument the Government argued several examples of Mr. Khweis forming an agreement to provide material support, and none of included a firearm used to advance or promote that agreement:

- "There is an offer, do you want to get inside this taxi? There is acceptance, yes, I do. Where are we going? We are going to ISIS. There is offer, there is acceptance, there is performance. There is unity of purpose there, ladies and gentlemen." T.T. at 1227. *No one used or carried a firearm to advance or promote this alleged agreement.*[2]

- "He has his blood drawn at the safe house. Can we draw your blood? Yes, you may. Offer, acceptance, unity of purpose." T.T. at 1233. *No one used or carried a firearm to advance or promote this alleged agreement.*

- "Conspiracy. … again, he is in that hotel room in Turkey. He could have turned around. He didn't. There is offer, there is acceptance, there is unity of purpose. I am agreeing to go with you to ISIS-controlled territory to provide myself." T.T. at 1236.  *No one used or carried a firearm to advance or promote this alleged agreement.*

- "I agree to be a suicide bomber." T.T. at 1236.  *No one used or carried a firearm to advance or promote this alleged agreement.*

- "There is a document, you have documentary evidence which states that his current mission is a fighter."  T.T. at 1236-37.  *No one used or carried a firearm to advance or promote this alleged agreement.*

- "I'm agreeing to have my blood drawn."  T.T. at 1237.  *No one used or carried a firearm to advance or promote this alleged agreement.*

---

[2] In fact, the Government was sure to establish that firearms were *not* part of this agreement.  *See* T.T. at 988.

- "I'm agreeing to be moved from one safe house to another." T.T. at 1237. *No one used or carried a firearm to advance or promote this alleged agreement.*

- "I'm agreeing to reside with ISIS members who are going off to fight." T.T. at 1237. *No one used or carried a firearm to advance or promote this alleged agreement.*

- "I'm agreeing to look after them." T.T. at 1237. *No one used or carried a firearm to advance or promote this alleged agreement.*

Furthermore, the jury heard no testimony about the type of weapon, the legality of its possession, the type of criminal activity conducted, and the time and circumstances under which the firearm was found – all factors to be considered in determining whether a sufficient nexus exists between possession of the weapon and the predicate offense. *See United States v. Khan*, 309 F. Supp. 2d at 825; *see also United States v. Timmons*, 283 F.3d at 1252.

For the evidence to be sufficient on Count three, the Government must have presented some evidence that at least one firearm advanced or promoted a specific predicate act of Mr. Khweis agreeing to provide material support to ISIS. No such evidence was presented. Therefore, the Court should enter a judgment of acquittal on Count III.

**ii.      *The evidence was insufficient to convict on count three because there was no evidence that the firearm used was a firearm.***

Even assuming, *arguendo*, that the evidence was sufficient to show that a firearm furthered Mr. Khweis' predicate offense, the evidence remains insufficient because the Government failed to show that the gun used met the statutory definition of a firearm.  In order to prove the defendant used or carried a firearm during and in relation to a crime of violence, or possessed a firearm in furtherance thereof, in violation of § 924(c) the

government was required to prove that the firearm used, carried, or possessed was in fact, a firearm.

As defined by statute—and as the Court instructed the jury—[t]he term "'firearm' includes any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive, or the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or any destructive device." T.T. 1209. "The government need only show that the weapons was either 'designed to' or 'may readily be converted.' It need not demonstrate both." *United States v. Rivera*, 415 F.3d 284, 287 (2d Cir. 2005) (citing 18 U.S.C. § 921(a)(3)).

While the firearm does not have to be operable to meet the definition of firearm, it must be readily converted to operable. *See United States v. Ferguson*, 138 F. App'x 568, 570 (4th Cir. 2005). Certainly, it would not be sufficient that the firearm be designed to merely look like it could expel a projectile by the action of an explosive. *See United States v. Kirvan*, 997 F.2d 963, 966 (1st Cir. 1993) ("…a toy or replica will not do.")

For a conviction to be sufficiently supported, there must be *some* evidence that the firearm at issue meets the statutory requirements for being a firearm. Typically, that testimony is through an expert witness, however, lay persons have been able to satisfy this element. *See id.* (two eyewitnesses described the gun in detail); *see also United States v. Lawson*, 810 F.3d 1032, 1040 (7th Cir. 2016) (the gun was pointed at the victim's stomach and the victim testified that she was familiar with guns, that the gun looked like a Cobra .380, and that it was not a revolver); *United States v. Stenger*, 605 F.3d 492, 504 (8th Cir. 2010) (four bank employees testified to the gun's appearance in the robbery); *United States v. Taylor*, 54 F.3d 967, 975 (1st Cir. 1995) (three

eyewitnesses testified that it was a gun); *United States v. Jones*, 16 F.3d 487, 490-91 (2d

Cir. 1994) (three eyewitnesses that the defendant brandished a silvergun with a white

handle); *United States v. Jones*, 907 F.2d 456 (4th Cir. 1990) (five witnesses described

the object as a gun); *Parker v. United States*, 801 F.2d 1382, 1383-85 (D.C. Cir. 1986)

(two eyewitnesses testified to the description of the gun used).

In this case, there was no evidence that the object referred to as a "gun" or

"firearm" was actually a gun or firearm under the definition.  There was no testimony by

an expert witness, or anyone, who examined or even saw this elusive firearm that

furthered Mr. Khweis' predicate offense.  Thus, there was no evidence that it was

designed, or readily converted to expel a projectile by action of an explosive.  The

Government did not present any testimony from any witness that he or she saw this

firearm fired or engaged in any other type of operation.  There was no testimony that the

gun appeared to be a real gun, there was no testimony providing any description of this

firearm at all.  In fact, the entire case presented no testimony at all to counter the possibly

that the firearm that furthered Mr. Khweis' predicate offense was a completely fake

weapon carried for show only, or that it was actually made of parts of old firearms

cobbled together to look like real guns, and had no functionality.  *See United States v.

Wada*, 323 F. Supp. 2d 1079, 1081-82 (D. Or. 2004) (finding guns deactivated or

modified by, *inter alia*, drilling barrels and filling them with metal pins or rods were no

longer "firearms" under § 921(a)(3) because it would be "extremely difficult" to convert

them into operable weapons).

To the extent the Government seeks to rely on Mr. Khweis' bald statement that he

saw a "gun" as satisfying the element in this case, this testimony would be entirely

insufficient.  First, for the reasons stated in part *iii infra,* it would be insufficient to base

an entire element on a defendant's uncorroborated admission.  Second, there was

absolutely *no* detail elicited about the firearm that would provide a sufficient basis for

concluding that it was designed, or readily converted to expel a projectile by action of an

explosive.  *See contra, United States v. Kirvan,* 997 F.2d at 966 ("In this instance, the

object was identified by two witnesses as a gun; one said that it was black and had a five

inch barrel and the other, who was closer, supplied more detail: he said that it appeared

'shiny, silver' in color; that it was 'large, very large for a handgun'; and that when it fell

to the floor, it made '[a] very loud noise. Heavy object hitting the floor.'").  There was no

testimony regarding the size of the firearm, its color, weight, whether it was loaded,

automatic, ever fired, etc.  Without any details, the bare mention of the term "gun," or

"firearm," is insufficient to meet the statutory definition, or element, of "firearm" in

924(c).

> **iii.     The evidence on count three was insufficient because the entirety of the
> evidence was the defendant's own admissions, and there was no
> independent corroborating evidence presented that this §924(c) crime
> with this defendant actually occurred.**

Even assuming, *arguendo*, that general comments about ISIS carrying firearms

would be enough to satisfy §924(c); and even assuming, *arguendo*, that the evidence was

sufficient to show the firearm was a real firearm, the evidence remains insufficient

because the Government presented no independent corroborating evidence that *this*

§924(c) crime with *this* defendant actually occurred.  There was no evidence other than

Mr. Khweis' admissions on this count of conviction.  For the conviction to stand, there

must have been *some* evidence outside of the defendant's admissions, that this crime

actually occurred.  There must have been some independent corroborating evidence

presented that this §924(c) crime with this defendant actually took place, not simply that ISIS was generally known to use firearms while Mr. Khweis was there. *See Opper v. United States*, 348 U.S. 84, 93 (1954)); *United States v. Stephens*, 482 F.3d 669 (4th Cir. 2007); *United States v. Hall,* 396 F.2d 841, 844 (4th Cir. 1968)*; United States v. Bryce*, 208 F.3d 346 (2d Cir. 2000); *United States v. Fearn*, 589 F.2d 1316 (7th Cir. 1978) (reversing convictions because the defendant's admissions constituted the only evidence linking him to criminal conduct).[3]

In *Wong Sun*, the Supreme Court wrote that "extrinsic proof [is] sufficient which 'merely fortifies the truth of the confession, without independently establishing the crime charged.'" *Wong Sun v. United States*, 371 U.S. 471, 488-89 (1963). The Court has held that when the *corpus delicti,* or the body of the crime itself, cannot be independently shown, corroborative evidence is sufficient if it "supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." *Opper v. United States*, 348 U.S. at 93 (citing *Wong Sun v. United States*, 371 U.S. at 488-89).

In *United States v. Stephens*, the defendant, Stephens, told agents he received cocaine from a dealer named Red, and that he fired shots with his handgun at Red's vehicle, which was a white Mazda. The Agent then testified that he was aware of a

---

[3] *See also Gonzalez-Jasso v. Roger*s, 264 F.2d 584, 587 (D.C. Cir Ct. App. 1959) (reversing convictions because the Government offered no corroborative evidence of the crime, the only evidence offered were admissions under oath, and the fact that the admissions were made under oath was of no consequence.") (citing *Martin v. United States*, 264 F. 950(8th Cir. 1920)); *Gulotta v. United States*, 113 F.2d 683, 686-87 (8th Cir. 1940); *Mathes v. Mid-Century Ins. Co.*, No. 4:06-CV-01161 SNL, 2008 U.S. Dist. LEXIS 46698, at *8 n.3 (E.D. Mo. June 16, 2008).

suspected drug dealer who was known as "Red" (whose real name was Nichols) who drove a white Mazda. *See United States v. Stephens*, 482 F.3d 669, 671 (4th Cir. 2007). The 4th Circuit held that the corroboration of these details "does not establish the necessary link between Stephens and Nichols to prove that those two were engaged in a conspiracy to sell cocaine." *Id.*

This case directly parallels *Stephens*. Generally, there were pictures of ISIS members holding firearms on Mr. Khweis' phone, and there was testimony that it is generally known ISIS uses armed guards. However, there was no firearm found, no picture of the firearms Mr. Khweis was purportedly in the presence of, no testimony about the specific houses or locations, and no testimony from any other witness who was with Mr. Khweis or in the presence of these purported firearms that further the predicate offense. Like *Stephens,* in which the agent testified he generally knew of a drug dealer named Red who drove a white Mazda, this evidences establishes that ISIS generally uses firearms. In both cases, there is simply no corroboration, not even slight corroboration, that this specific §924(c) crime actually occurred with this defendant. This crime is an *act*, not general circumstances, and it is an *act* that must be proven to have occurred by some independent corroboration, however slight. There was no independent evidence presented regarding the firearm that was used to further Mr. Khweis' agreement to provide material support. Therefore, the Court should acquit Mr. Khweis of count III.

### iv.    *Providing material support to a Foreign Terrorist Organization is not a crime of violence.*

Even assuming, *arguendo*, that the firearm was proven to be a real firearm; even assuming, *arguendo*, that general comments about ISIS carrying firearms would be enough to sustain a conviction on this count; and even assuming *arguendo* that there

enough independent corroborating evidence on count three; Mr. Khweis was convicted of an offense that is not an offense because providing material support to a terrorist organization is not a crime of violence.  Title 18 of U.S.C. § 924(c)(3) defines a "crime of violence" as follows:

> (3) For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –
>
>> (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>>
>> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The first clause – § 924(c)(3)(A) – is commonly referred to as the force clause. The other – § 924(c)(3)(B) – is commonly known as the residual clause.  In the same way that the Armed Career Criminal Act's ("ACCA's") residual clause, (18 U.S.C. § 924(e)(2)(B)(ii)) is unconstitutionally vague, the § 924(c) residual clause is likewise unconstitutionally vague, and a § 2339B offense cannot qualify as a "crime of violence" under the § 924(c) residual clause.  An 18 U.S.C. § 2339B offense also categorically fails to qualify as a "crime of violence" under the § 924(c)(3)(A) force clause as a matter of law.  Therefore, the "crime of violence" element of § 924(c) cannot be satisfied here, and Mr. Khweis was convicted of an offense that is not an offense.

### A.   Section 924(c)'s residual clause is unconstitutionally vague.

A § 2339B offense cannot qualify as a "crime of violence" under § 924(c)(3)'s residual clause because the clause is void for vagueness under *Johnson*. In *Johnson*, the Supreme Court decided held that the ACCA residual clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another") is unconstitutionally

13

vague.  This decision applies to the parallel "crime of violence" definition in §

924(c)(3)'s residual clause because Section 924(c)(3) residual clause is materially

indistinguishable from the ACCA residual clause, and suffers from the same flaws that

compelled the Supreme Court to declare the ACCA residual clause void for vagueness.

*See United States v. Smith*, No. 2:11CR058, 2016 WL 2901661 (D. Nev. May 18, 2016)

(concluding that § 924(c)'s residual clause is void after *Johnson*); *United States v.*

*Lattanaphom*, No. 2:99-00433, 2016 WL 393545 (E.D. Cal. Feb. 2, 2016) (same); *United*

*States v. Bell*, No. 15-cr-258, 2016 WL 344749 (N.D. Cal. Jan, 28, 2016) (same); *United*

*States v. Edmundson*, No. PWG-13-15, 2015 WL 9311983 (D. Md. Dec. 23, 2015)

(same).

 Furthermore, the Ninth Circuit in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir.

2015), and the Seventh Circuit in *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir.

2015) recently struck down a residual clause identical to that in § 924(c) – 18

U.S.C.§16(b) – as unconstitutionally vague in light of *Johnson*.[4]  Thus, it violates due

process to categorize a predicate conviction as a "crime of violence," under §

924(c)(3)(B).

    **B.**  *A § 2339B offense categorically fails to qualify as a "crime of*
        *violence" under § 924(c)(3)(A), the force clause*

 The Court must employ the categorical approach to determine if an offense

qualifies as a "crime of violence" under the "force" clause. *See Descamps v. United*

*States*, 133 S. Ct. 2276, 2283 (2013); *See United States v. Fuertes*, 805 F.3d 485, 498 (4th

---

[4] *Dimaya* is currently pending in the Supreme Court of the United States, and was
recently scheduled for re-hearing in October 2017.  In the Fourth Circuit, *United States v.*
*Hector Martinez-Guillen*, Case No. 17-6314, which squarely addresses this issue specific
to 18 U.S.C. §2339B and a §924(c) conviction, is being held in abeyance pending the
decision in *Dimaya.*

Cir. 2015); *United States v. Royal*, 731 F.3d 333, 341-41 (4th Cir. 2013). This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps*, 133 S. Ct. at 2283 (citation omitted); *Royal*, 731 F.3d at 341-42. Under the categorical approach, an offense qualifies as a "crime of violence" only if all of the criminal conduct covered by a statute – "including the most innocent conduct" – matches, or is narrower, than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

As a result, for an offense to qualify as a "crime of violence" under the "force" clause, the offense must have as an element, the use, attempted use, or threatened use of "physical force" against another person or property. 18 U.S.C. § 924(c)(3)(A). "[T]he phrase 'physical force' means *violent* force--that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. at 140 (emphasis in original).[5]

---

[5] Courts of Appeals have consistently held that 18 U.S.C. § 16(a) (which is almost the same as § 924(c)(3)(A)) contemplates "destructive," "violent force" – not *de minimis* force. *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001); see also *Flores-Lopez v. Holder*, 685 F.3d 857, 864 (9th Cir. 201) (requiring "use of violent, physical force"); *United States v. Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009); *Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003); *Bazan- Reyes v. INS*, 256 F.3d 600, 611 (7th Cir. 2001) ("[T]erm 'physical force' in 18 U.S.C. § 16(b) refers to actual violent force."). Indeed, the Supreme Court in *Johnson* cited lower court opinions defining "physical force" under § 16 when defining "physical force" in the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). 559 U.S. at 140 (citing *Flores*, 350 F.3d at 672).

Under these terms, Mr. Khweis' offense of material support to a designated foreign terrorist organization categorically fails to qualify as a § 924(c) "crime of violence" under the force clause.  A violation of § 2339B does not contain an element of use, attempted use, or threatened use of violent physical force. Therefore, it cannot be a crime of violence under the remaining force clause of § 924(c).

Section 2339B of Title 18 prohibits knowingly providing material support or resources to a foreign terrorist organization.  It states that, "a person must have knowledge that the organization is a designated terrorist organization [], that the organization has engaged or engages in terrorist activity [], or that the organization engages in terrorism[.]" More importantly, "the term 'material support or resources' means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel [], and transportation, except medicine or religious materials[.]" 18 U.S.C. § 2339A(b)(1).

Based solely on the statute's text, it is possible for a defendant to violate § 2339B simply by donating funds to a designated foreign terrorist organization.  In fact, § 2339B has been challenged several times on First Amendment grounds because it can be violated merely through speech. *See e.g., Holder v. Humanitarian Law Project*, 561 U.S. 1, 26 (2010).  Certainly, if there is a question as to whether the statute could be violated through mere speech, it does not suggest the violent physical force necessary for an offense to serve as a § 924(c) predicate.  After *Johnson*, violations of § 2339B can no longer be § 924(c) predicates because they do not contain the necessary physical force

16

element. Thus, Mr. Khweis was convicted of an act that is not a criminal offense, and this Court should therefore enter a judgment of acquittal on Count Three.

In sum, the firearm in this case cannot be a hypothetical firearm simply because the government's imagery in this case depicted "firearms everywhere." T.T. 1165. To prove a *bona fide* §924(c) conviction, **the evidence must establish that *an actual firearm* was *actually* used by a co-defendant to further an *actual predicate offense*.** The evidence was insufficient for this finding beyond a reasonable doubt. Therefore, Mr. Khweis must be acquitted of count III.

## III.    The evidence was insufficient to sustain convictions on Counts I and II, and if found sufficient, Section 2339B violates the First Amendment and is unconstitutionally vague as applied.

Section 2339B of Title 18 makes it unlawful to knowingly provide "material support or resources to a foreign terrorist organization." It is a critical element of the offense that the material support went to an organization designated as a foreign terrorist organization. *United States v. Chandia*, 514 F.3d 365,372 (4th Cir. 2008). Merely proving the defendant made contributions "to individuals who happen to be [Foreign Terrorist Organization] members" is not enough. *United States v. Warsame*, 537 F. Supp. 2d 1005, 1022 (D. Minn. 2008). *See also United States v. Paracha*, 2006 WL 12768 (S.D.N.Y. 2006) ("[Section 2339B] require[es] that the government prove 'not only that [defendant] in fact rendered material support or assistance ... to one or more members of al Qaeda, but also that he acted with the knowledge that his support would be used to further al Qaeda activities and not just the personal interests of the individual members."). In this case, the indictment specified allegations that Mr. Khweis provided, and conspired to provide, personnel and services.

17

Courts apply the term "personnel" under § 2339B to encompass conduct that represents a defendant's direct support or offer to serve *at the will of* a foreign terrorist organization, such as: (1) participating in an Al Qaeda training camp, *see, e.g., United States v. Warsame*, 537 F. Supp. 2d 1005, 1018 (D. Minn. 2008); *United States v. Goba*, 220 F. Supp. 2d 182, 194 (W.D.N.Y. 2002); *United States v. Lindh*, 212 F. Supp. 2d 541, 574 (E. D. Va. 2002); (2) offering to serve as a martial arts trainer and an on-call doctor to Al Qaeda, see *United States v. Farhane*, 634 F.3d 127, 140 (2d Cir. 2011); *United States v. Shah*, 474 F. Supp. 2d 492, 498–99 (S.D.N.Y. 2007) (volunteering as a medic for the Al Qaeda military); (3) recruiting and directing an individual to conduct activities on behalf of Hamas, including scouting locations for attacks and meeting with Hamas leaders, *see United States v. Marzook*, 383 F. Supp. 2d 1056, 1066 (N.D. Ill. 2005); and (4) taking direct steps in furtherance of a specific terrorist plot, *see United States v. Augustin*, 661 F.3d 1105, (11th Cir. 2011).

An oath of allegiance to the foreign terrorist organization, without more, is not enough.  *See e.g. United States v. Lindh*, 212 F. Supp. 2d at 567.  An allegation that a defendant merely communicated with others in a terrorist group also does not suffice as providing "personnel" to a foreign terrorist organization, unless the defendant did so at the direction or control of the organization. *See e.g. United States v. Warsame*, 537 F. Supp. 2d at 1018; *see also United States v. Hammoud*, 381 F.3d 316, 328 (4th Cir. 2004) ([I]tis a violation of the First Amendment to punish an individual for mere membership in an organization that has legal and illegal goals. Any statute prohibiting association with such an organization must require a showing that the defendant specifically intended to further the organization's unlawful goals.").

The Supreme Court has interpreted "service" under 18 U.S.C. § 2339B to mean concerted activity, not independent advocacy. *See Humanitarian Law Project,* 561 U.S. at 23-24 (citing Webster's Third New International Dictionary 2075 (1993)); *see also Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011) ("The Supreme Court has broadly understood a 'service' to mean 'the performance of work commanded or paid for by another,' or 'an act done for the benefit or at the command of another.'"). The Court made clear that there must be "a connection between the service and the foreign group." *Id.* (noting that the term "service" "cover[s] advocacy performed in coordination with, or at the direction of, a foreign terrorist organization.").

In this case, first, the record provides insufficient evidence to show that Mr. Khweis intended to support ISIS, the organization, rather than an individual person who happens to be an ISIS member.  There were no messages showing a support for ISIS generally, Mr. Khweis provided no statements that he supported ISIS as an organization (in fact, he stated quite the opposite), and no one testified that Mr. Khweis exhibited support for ISIS, the organization.

Second, with respect to "personnel," unlike the prevailing case-law, there was no evidence that Mr. Khweis provided direct support or offer to serve at the will of a foreign terrorist organization, that he recruited or scouted, or took any direct steps in furtherance of a terrorist plot.  *see, e.g., United States v. Warsame*, 537 F. Supp. 2d at 1018; *United States v. Goba*, 220 F. Supp. at 182; *United States v. Lindh*, 212 F. Supp. 2d at 574; *United States v. Farhane*, 634 F.3d at 140; *United States v. Shah*, 474 F. Supp. 2d at 498–99; *United States v. Marzook*, 383 F. Supp. 2d at 1066; *United States v. Augustin*, 661 F.3d 1105.  Finally, as to alleged " services," there was no evidence that Mr. Khweis

engaged in "advocacy performed in coordination with, or at the direction of, a foreign terrorist organization." *Humanitarian Law Project*, 561 U.S. 1 at 24.  The documents recovered in Mosul show that Mr. Khweis was present, and that the unknown person writing ascribed the term "fighter" to him.[6]   However, the context and circumstances of that document are entirely unknown, and Mr. Khweis testified that he never traveled with the intent to be a fighter or to support ISIS.  Furthermore, the evidence showed Mr. Khweis didn't become a fighter, he escaped.

Should the Court enter the convictions in this matter, the result would violate Mr. Khweis' First Amendment protections, or be unconstitutionally vague, as-applied in this case.  Without any of the evidence described above, the convictions criminalize Mr. Khweis' mere association with alleged ISIL members.  *See United States v. Hammoud*, 381 F.3d at 328.  As the Court noted in *Keyishian v. Bd. of Regents*, 385 U.S. at 591, "A law which applies to membership without the 'specific intent' to further the illegal aims of the organization infringes unnecessarily on protected freedoms.  It rests on the doctrine of 'guilt by association' which has no place in the United States."

Furthermore, criminalizing Mr. Khweis' conduct in this case, without more, would render §2339B unconstitutionally vague as-applied because it would blur the line between "associating" versus "serving" or being "personnel," such that the law would fail to provide proper notice.  " A statute is unconstitutionally vague as applied 'if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' or 'if it authorizes or even encourages arbitrary and discriminatory

---

[6] Mr. Khweis maintains that these documents should not have been admitted at trial for the reasons stated in during trial and at the suppression hearing.  Therefore, he respectfully requests a new trial on that basis as well.

enforcement.'" *United States v. Stewart*, 590 F.3d 93, 117 (2d Cir. 2009)(citing *Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000)).  For these reasons, the Court should enter a judgment of acquittal for Counts I and II, or alternatively, grant a new trial.

## **CONCLUSION**

WHEREFORE for the above reasons, this Court should order a judgment of acquittal in favor of Mr. Khweis as to all charges, or alternatively, a new trial under Fed. Crim. R. 33 in the interest of justice.

Respectfully submitted,
MOHAMAD KHWEIS
By Counsel

_____/s/_____
Jessica N. Carmichael, Esq.
Virginia Bar No. 78339
HARRIS CARMICHAEL & ELLIS, PLLC
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
(703) 684-7908
jcarmichael@harriscarmichael.com

_____/s/_____
John K. Zwerling, Esq.
Virginia Bar No. 8201
ZWERLING/CITRONBERG, PLLC
114 N. Alfred Street
Alexandria, VA 22314
703-684-8000
jz@zwerling.com

## <u>CERTIFICATE OF SERVICE</u>

  I, hereby certify, that on the 7th day of August, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following and all parties to this action:

Dennis Fitzpatrick, Esq.
United States Attorney's Office
2100 Jamieson Ave
Alexandria, VA 22314
(703) 299-3700
Email: dennis.fitzpatrick@usdoj.gov

Raj Parekh, Esq.
US Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Email: raj.parekh@usdoj.gov


        _____/s/_____
        Jessica N. Carmichael, Esq.