UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                                              :

UNITED STATES OF AMERICA               :

                        :

              - against -           :     **ORDER**

                        :

ADNAN IBRAHIM HARUN A HAUSA,   :
a.k.a. Spin Ghul                 :     12 Cr. 0134 (BMC)
a.k.a. Esbin Gol                :
a.k.a. Isbungoul                :
a.k.a. Abu Tamim              :
a.k.a. Joseph Johnson          :
a.k.a. Mortala Mohamed Adam,    :

                        :

                   Defendant.    :
--------------------------------------------------------------- X

**COGAN**, District Judge.

     Before the Court is defendant's motion challenging his competency to stand trial.  Based on the medical reports, the testimony given during the competency hearing, and my own observations, I find that defendant has failed to show that he is incompetent to stand trial by a preponderance of the evidence.  I affirm my previous finding that defendant is competent to stand trial.

     The standard governing a determination of competence is a preponderance of the evidence, and here, because defendant was challenging an earlier ruling of competency, he shouldered that burden.  See 18 U.S.C. § 4241(d).  With respect to the kinds of evidence that may be considered "[i]n making a determination of competency, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment."  United States v. Nichols, 56 F.3d 403, 411 (2d Cir. 1995).  In considering the instant motion, I reviewed the report of defendant's expert, Dr. Jess Ghannam, a licensed clinical psychologist, who interviewed Harun on two occasions, the 2017 rebuttal report of Dr. Mark

Mills, a forensic psychiatrist who had previously interviewed Harun and submitted his own medical report in 2013, and Dr. Ghannam's reply to Dr. Mills' 2017 report.  I further re-reviewed Dr. Mills' 2013 report, as well as the 2014 report of Dr. Richard DeMier, a clinical psychologist, who also had previously observed Harun for an extended period of time in the summer of 2014. Additionally, the Court held a competency hearing, where I received the Ghannam and Mills reports as the direct examinations and permitted defendant and the Government to cross examine Dr. Mills and Dr. Ghannam, respectively, on their reports.  Finally, I reflected on my own observations of Harun in Court and considered those observations, as well.[1]

The most important conclusion that I have drawn from the reports, testimony, and observations is that no one disputes Harun's behavior and conduct; rather, the dispute consists entirely of the inferences to be drawn from that behavior and conduct.  Dr. Ghannam, Dr. Mills, and Dr. DeMier all observed the same behavior by Harun, whether it was in 2013, 2014, or 2016, and in fact, even in 2012, the doctors abroad in Italy observed similar characteristics.  As a result, the question before me now is essentially the same as it was in 2015 – that is, whether Harun is exercising volition in the way he conducts himself.  The lack of change in Harun's behavior suggests to me that nothing has changed between 2015 and now.

Moreover, having recently reviewed the transcripts of the interviews in Italy, which were provided as part of the motion to suppress and which the reports reference, I am in fact struck by the consistency between Harun's behavior in 2012 and now, particularly those observations that

---

[1] After the close of the competency hearing, defense counsel filed a letter requesting that the Court visit the MCC to observe Harun's behavior in real time, given his absence from recent Court appearances (as a result of his refusal to attend and his counsel's waiver of his appearance because of his refusal).  Defendant alternatively suggested that the Court review several weeks' worth of video footage of Harun in his cell.  That request is denied.  The transcripts of the last conferences where defendant appeared, either in person or by video, demonstrate that my presence only incites him to act out, and seeing that again would give me no new information.  Moreover, regarding the videotapes, defendant's letter does not suggest a behavior any different than the behavior that all of the medical experts have already identified.  Thus, my observation of his behavior, whether in real time or by video, has no potential to yield any different information than what I have already considered.

Dr. Ghannam highlighted as emblematic of incompetence, like his logorrhea and his sudden agitation and fits. For example, in Italy, Harun spoke at length, often refusing to permit the translator time to translate, and would grow agitated or irate when he was interrupted to facilitate translation. Harun even acknowledged in Italy his tactic of banging on doors and screaming when he felt the Italians were not paying sufficient attention to him.

Regarding Dr. Ghannam's emphasis on Harun's lack of hygienic self-care, Harun had previously stated that he chooses to keep himself unkempt and unclean to make it more difficult for the prison guards to be around him. Further, I do not credit Dr. Ghannam's testimony regarding the cultural sensitivities to the effect that a devout Muslim would never keep himself unclean in the way Harun does. First of all, for all of the talk by defense counsel and Dr. Ghannam regarding the importance of a cultural affinity between defendant and Dr. Ghannam, the net gain of that cultural kinship was marginal. Dr. Ghannam opined that not needing a translator was significant and that his cultural knowledge base permits him to conclude that the Islamic condemnation of public masturbation and defecation are substantial indicators of incompetence. As to the former, Dr. Ghannam admitted that he has used interpreters in the past in evaluating some subjects' mental condition, and in this Court, I regularly rely on psychiatric evaluations made with the aid of an interpreter. As to the latter, the Islamic condemnation strikes me as no different or greater than the condemnation of such repulsive conduct by the other Abrahamic religions or even by society at large.

Second, even if I were to credit Dr. Ghannam's opinion that Islam has a special rejection of such conduct, that opinion reinforces my conclusion that Harun has chosen to demonstrate his contempt for the judicial process and the United States by engaging in conduct that he believes is highly repulsive and repugnant. To the extent that the requirements of being a faithful Muslim

conflict with his demonstration of his disrespect for this country's legal process, Harun has decidedly shown that the latter is more important.

As stated, the issue is volition, and time and again, I have observed that Harun chooses when to be respectful and cooperative. The last time that I saw him, on a video link from his cell for a court conference, he could not have been clearer and more deliberate in demonstrating his contempt for me, if not personally, then as a symbol of an institution he detests. It was not Dr. Ghannam's ability to speak to him in Arabic that prompted cooperation one day and agitation the next; it is the game that he plays. Harun demonstrated that same behavior when Dr. DeMier observed him and when Dr. Mills observed him. Even during the course of this prosecution, Harun has alternated between cooperation and refusal to engage.

Furthermore, while Harun has been difficult at times, including the last several months, I have observed that he understands this Court's role. His lack of respect for this Court and his rejection of these legal proceedings does not demonstrate his incapability of assisting in his defense. Rather, they demonstrate that he has volitionally refused to assist in his defense in the same way that he has volitionally refused to bathe himself.

Dr. Ghannam's alternate characterization of Harun's behavior does not change this finding, not only because it simply repackages the same behavior in a different bottle, but also because, as will be discussed *infra*, Dr. Ghannam's credibility is severely compromised. Further, district courts have wide latitude in determining on which opinions to rely, and here, I find Dr. Ghannam's opinion wholly unconvincing. See United States v. Gigante, 166 F.3d 75 (2d Cir. 1999) ("Where there are two permissible views of the evidence as to competency, the court's choice between them cannot be deemed clearly erroneous." (internal quotation marks omitted)).

Case 1:12-cr-00154-BMC-MDG   Document 228   Filed 02/24/17   Page 5 of 6 PageID #: 4600

I recognize that Dr. Ghannam has now diagnosed Harun with paranoid schizophrenia (whereas neither Dr. Mills nor Dr. DeMier provides a diagnosis).  However, even if I were to credit that diagnosis, it would not, by itself, require a finding of incompetence.  "[I]t is well-established that some degree of mental illness cannot be equated with incompetence to stand trial."  United States v. Vamos, 797 F.2d 1146, 1150 (2d Cir. 1986).  With respect to paranoid schizophrenia, that diagnosis does not equate to incompetence *per se* either.  Accord Newfield v. United States, 565 F.2d 203 (2d Cir. 1977) (finding a defendant suffering from chronic undifferentiated schizophrenia competent to stand trial).

Finally, Dr. Ghannam's opinion is fundamentally unreliable because Dr. Ghannam is not credible.  During his cross examination, Dr. Ghannam was repeatedly impeached with evidence demonstrating his bias against the United States such that the value of his opinion was discredited almost entirely.  People are free to espouse whatever political and ideological beliefs they want; that is their right and it is Dr. Ghannam's right as well, but his beliefs, which he has publicly stated on radio shows, in documentaries, at rallies, at protests, and in writings, bespeak an individual whose bias is so significant that, in cases like this, his credibility is irrevocably compromised.  Of course, when asked on redirect whether, in effect, he could put aside his bias, he answered affirmatively, but I could not credit that conclusion any more than his opinions in this case.

I do not need to recount the litany of statements the Government confronted Dr. Ghannam with, but two suffice to make the point.  First, in one speech that Dr. Ghannam gave, he characterized the United States as "an imperial juggernaut" that keeps countries in the Arab world "under [its] boot and thumb."  Second, in disputing the definition of terrorism in an article, Dr. Ghannam wrote that, "One person's terrorist is another person's freedom fighter."  Simply

put, an individual who harbors the beliefs and confirmation bias that Dr. Ghannam does against the United States is incapable of objectively analyzing the psychological condition of an alleged al Qaeda terrorist being tried in the United States.  His opinion cannot be divorced from his bias because his bias is so pervasive.

To be competent to stand trial, "[t]he defendant must have (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and (2) a rational as well as factual understanding of the proceedings against him," Nichols, 56 F.3d at 410 (internal quotations marks omitted).  Here, after examining the evidence before me, I find that, based on a preponderance of that evidence, defendant has that ability and understanding; therefore, he is competent to stand trial in this case.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       February 24, 2017

6