IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:16-cr-143 |
| | ) | Hon. Liam O'Grady |
| MOHAMAD JAMAL KHWEIS, | ) | |
| | ) | |
| *Defendant*. | ) | Sentencing: October 27, 2017 |

**UNITED STATES' RESPONSE IN OPPOSITION TO THE
DEFENDANT'S MOTION FOR A NEW TRIAL UNDER RULE 33**

The United States of America, by and through undersigned counsel, respectfully opposes Mohamad Khweis's ("the defendant") motion for a new trial based on a recently discovered document reflecting the defendant's membership with the Islamic State of Iraq and al-Sham ("ISIS" or the "Islamic State"). *See* Dkt. No. 232. Based on the quantum of testimonial, documentary, and electronic evidence presented to the jury in this case, including the defendant's admissions to the FBI and during his testimony at trial, the defendant cannot establish that the newly discovered document is either material to the defendant's guilt or innocence, or that it raises the probability of an acquittal at a new trial. S*ee United States v. Robinson*, 627 F.3d. 941, 950 (4th Cir. 2010) (pursuant to a materiality analysis, the newly discovered "evidence says little about [the defendant's] guilt or innocence on these counts.") (citation omitted).

**I.      BACKGROUND**

Following a jury trial in this Court, the defendant was found guilty on June 7, 2017 of all three counts charged in the Superseding Indictment, to include, conspiring to provide material support or resources to ISIS in violation of 18 U.S.C. § 2339B (Count One); providing and

attempting to provide material support or resources to ISIS, also in violation of 18 U.S.C. § 2339B (Count Two); and possessing, using and carrying firearms in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three).

On or about August 30, 2017, the undersigned prosecutors learned of an additional document reflecting the defendant's association with ISIS. The document is described in the following manner: Shortly before June 7, 2017, the U.S. Government obtained an additional document in Arabic with two entries reflecting Mohamad Khweis's association with ISIS. A relevant translation of the document has been completed. The information contained in the document substantially reflects Khweis's name, date of birth, and other biographical information. One entry heading on the document states "notes" or "remarks" in Arabic. This "notes" entry is blank for both Khweis entries. Entries for some other individuals on the document are also blank, but some have the notation "fighter" or other notations. Additional facts and circumstances concerning the document remain classified for the reasons explained in the government's motion filed on October 20, 2017 pursuant to Section 4 of the Classified Information Procedures Act. Classified discovery has been made available to the defendant's counsel concerning this newly discovered document.

## II.     LEGAL STANDARD

The Fourth Circuit follows the "*Chavis* Test" in evaluating a motion for a new trial under Federal Rule of Criminal Procedure 33 ("Rule 33") grounded on newly discovered evidence. *United States v. Moore*, 709 F.3d. 287, 292 (4th Cir. 2013) (citing *United States v. Chavis*, 880 F.2d. 788, 793 (4th Cir. 1989)). To receive a new trial under Rule 33 based upon newly discovered evidence the defendant must satisfy a five-faceted test by demonstrating that "(1) the evidence is newly discovered; (2) the defendant exercised due diligence; (3) the newly

discovered evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence would probably result in an acquittal at a new trial." *Id.* "Unless the defendant demonstrates all five of these factors, the motion should be denied." *United States v. Pierre*, 525 Fed. Appx. 237, 239 (4th Cir. 2013) (citing *Chavis*, 880 F.2d at 793). Moreover, a court "should exercise its discretion to award a new trial sparingly and a jury verdict is not to be overturned except in the rare circumstances when the evidence weighs heavily against it." *United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006) (internal quotation marks and citation omitted).

With respect to Rule 33's materiality and the impact on guilt or innocence we turn to the well-established *Brady*[1] principles. On June 22, 2017, in *Turner v. United States*, __ U.S.__, 137 S.Ct. 1885 (2017), the Supreme Court re-affirmed its materiality requirement. Specifically, writing for the majority, Justice Breyer stated (*Turner*, 137 S. Ct. at 1893):

> "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469–470 * * * (2009) (citing [*United States v.*] *Bagley,* [473 U.S. 667, 682 (1985)]). "A 'reasonable probability' of a different result" is one in which the suppressed evidence "'undermines confidence in the outcome of the trial.'" *Kyles* [v. Whitley, 514 U. S. 419, 434 (1995)] (quoting *Bagley, supra*, at 678 * * *). In other words, petitioners here are entitled to a new trial only if they "establis[h] the prejudice necessary to satisfy the 'materiality' inquiry." *Strickler* [v. Greene, 527 U.S. 263, 282 (1999)].

### III.   ARGUMENT

Given the quantum of evidence pointing to the defendant's guilt on all three charges, including testimonial, documentary, and electronic evidence presented to the jury, as well as his own admissions to the FBI and during his testimony at trial, the absence of a notation in the

---

[1] The defense has **not** claimed that the government violated any of its obligations to disclose exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The references to *Brady* in the government's response are included for the sole purpose of explaining the Supreme Court's "materiality" standard.

notes or remarks column identifying the defendant as a fighter does not "undermine confidence in the outcome of the trial" in this case. *Kyles* 514 U.S. at 434 ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."). Rather, the newly discovered document is an additional piece of *inculpatory* information which, had the government possessed the document at trial, would have been used to further demonstrate that the defendant was firmly placed within the personnel or services machinery of the terrorist organization. The defendant's strained argument that the absence of a fighter notation undermines the confidence in the jury's verdict is misplaced for several reasons.

*First*, it is nothing more than a bald, conclusory assertion to suggest that the absence of a fighter notation somehow proves that the defendant did not sign up, or was in training, to become a fighter for ISIS. *See* Dkt. 232 at 2. If the document affirmatively indicated that the defendant was not a fighter, such an argument would carry some weight. However, the absence of a "note" or "remark" in no way suggests that the jury would have acquitted the defendant of any charge, particularly given that the ISIS camp roster that included his name and "[c]urrent mission" as a "[f]ighter" with 19 other ISIS fighters is from January 2016 (*see* Gov. Exs. 30A-B), while the newly discovered document, as the defendant concedes in his motion, contains entries from subsequent dates. *See* Dkt. 232 at 3 and 6. The evidence at trial unequivocally established that the defendant resided and served with ISIS in several different safe houses and locations in Syria and Iraq, and was transported by ISIS to several different safe houses and locations across a broad swath of ISIS-controlled territory, both of which occurred during different periods of time over the course of 2.5 months.

4

*Second*, the defendant's participation in the conspiracy and provision of material support or resources to ISIS, as the jury was properly instructed, was in the form of personnel and/or services. None of the charges required the government to prove that the defendant was a "fighter" for ISIS during the entire duration, or for any portion, of his service with the terrorist organization. As demonstrated at trial, the government's evidence focused on, *inter alia*, (1) testimony from a Kurdish Peshmerga soldier who provided the jury with eyewitness observations from the battlefield, explaining that when he captured the defendant in a war zone filled with ISIS snipers, the defendant was coming from the direction of Tal Afar, Iraq and the villages near there, which was "all ISIS occupied territory"; (2) a voluminous amount of terrorism-related images and ISIS propaganda located on the defendant's phones; (3) numerous post-*Miranda* admissions of the defendant, including his agreement and willingness to serve as a suicide bomber for ISIS; and (4) evidence that ISIS formed an army within a closed society and that the army depends upon an entire roster of "personnel" to perform a variety of functions and services.

In his motion, the defendant asserts that "his entire defense was that he lacked the intent to provide support to ISIS when he made his journey," and then inexplicably claims that "[t]he Government's primary argument against this was the document labeling Mr. Khweis as a 'fighter' for ISIS." Dkt. 232 at 8. This argument flies in the face of the wealth of evidence, excluding the ISIS camp roster, that the jury received and considered before announcing its guilty verdict on all three counts. The government presented extensive corroboration of the defendant's statements regarding his knowledge of ISIS, his travel to ISIS-controlled territory, and his communications with ISIS facilitators/recruiters. For example, the forensic analysis of the defendant's phones corroborated the defendant's statements that he knew ISIS engages in terrorism before he voluntarily entered ISIS-controlled territory, and further reinforced his

5

unmistakable intent and strong desire to join and serve the terrorist organization.  *See* Trial Tr. at 942:7-943:3.  Before the defendant even left the United States and joined ISIS, the jury heard testimony and viewed documentary evidence that the defendant quit his job, closed online accounts, lied to his family about where he was going, and sold his car just days before his departure on a one-way ticket.  *Id.* at 680:11-682:16; 934:10-22; 938:8-14; Gov. Exs. 47 and 79.  Any suggestion that the defendant wanted to join ISIS "real quick and come back out" is preposterous.  Trial Tr. at 857:7-8.  As this Court stated, "[h]is conduct strongly suggests that he did not expect to return home to see his family."  *United States v. Khweis*, No. 1:16-CR-143, 2017 WL 2385355, at *12 (E.D. Va. June 1, 2017).

The jury also viewed the defendant's overseas wireless network connection data points, Google/Internet search history, DMV records, car rental records, airline records, bank records, email records, and social media records, all of which corroborated his statements and demonstrated how he made it from his couch in Alexandria, Virginia to an ISIS safe house in Raqqa, Syria, within a few weeks.  *See* Gov. Exs. 4 (slides 13-18 and 20-24), 46-49A, 50A-51, 53-54, 57-70, 74; Trial Tr. 1056:15-18.  While in Gaziantep, Turkey, the defendant voluntarily agreed to enter a taxi with other ISIS recruits, avoided land mines and bombs on foot, and agreed to travel in another vehicle with an armed ISIS member, in order to enter ISIS-controlled territory for the purpose of joining the terrorist organization.  Trial Tr. at 728:23-730:15.

The defendant's statements about his interest in serving as a fighter and/or suicide bomber for ISIS were corroborated through his Facebook and Twitter records that showed the creation of the username "iAGreenBirdiA" while he was in Turkey, which the defendant acknowledged is used by ISIS and other violent terrorist groups to reference martyrdom, violent jihad, and suicide operations.  *See* Gov. Exs. 61-62; Trial Tr. 540:5-9.  The government also

corroborated the defendant's statements about contacting certain individuals affiliated with ISIS while in Turkey to seek assistance in completing his journey to the Islamic State through the use of records from Twitter. The jury viewed a private Twitter message that the defendant sent to an individual who appeared to be recruiting foreign fighters for ISIS, asking whether that individual used a specific encrypted social media platform, because the defendant "knew that individuals affiliated with ISIS would feel more comfortable talking to [him] over Telegram than Twitter." *See* Gov. Ex. 66; Trial Tr. 984:22-25.

In addition to his agreement during the intake process to serve as a suicide bomber for the Islamic State, and again, entirely separate and apart from the ISIS camp roster, the defendant resided and/or traveled with ISIS fighters to multiple safe houses, including with another American who had trained with ISIS to conduct an attack in the United States (Trial Tr. at 1064:8-1065:3); agreed to have his blood drawn by ISIS and was subsequently issued an ISIS identification card with his *kunya* listed (*Id.* at 557:8-23); participated in ISIS-directed religious training (*Id.* at 562:1-5); attended ISIS lectures and constantly watched military videos with his fellow ISIS members for inspiration (*Id.* at 564:1-7); frequently gave money to ISIS members (*Id.* at 563:21-23); and cared for wounded ISIS fighters, including an injured Libyan fighter to whom the defendant provided a Virtual Private Network to help the ISIS fighter conceal his online activity and disguise his location (*Id.* at 565:3-566:9); among other forms of material support and services that the defendant provided to ISIS.

The jury also heard testimony that the defendant admitted, while he was a member of ISIS in Iraq, "[i]n addition to household salaries, each ISIS member was given a salary for their service." Trial Tr. 563:16-20. The fact that the defendant received a stipend or allowance from ISIS is reflected on the ISIS camp roster that was admitted at trial (*see* Gov Exs. 30A-B) and the

newly discovered document, which further demonstrates that the defendant provided personnel and/or services to the organization. The notion that the "most lethal terrorist organization in the world" would provide money to an individual who is residing with them in a war zone for 2.5 months just to "check things out" is absurd, and should be categorically rejected.

*Third*, the defendant's conviction on Count Three does not rise or fall upon the ISIS camp roster that was admitted at trial. Far from it. The jury was properly instructed as to whether the defendant is liable for the offense as a *Pinkerton* co-conspirator, which the Court defined as a conspirator who is "responsible for offenses committed by other conspirators if the conspirator was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of the conspiracy." Trial Tr. 1208:25-1209:4. The newly discovered document is not material to the defendant's guilt or innocence, and there is no basis to suggest that it would result in an acquittal at a new trial. If anything, the document provides further evidence that ISIS members serve as fighters in furtherance of their conspiratorial objectives to expand its so-called caliphate by violence, which the defendant knew before he traveled overseas and that he nonetheless wanted to see and "be part of it" (*Id.* at 531:1-10; 954:13-16); that ISIS conducts military and terrorist operations in Syria and Iraq (*Id.* at 526:16-18); and that ISIS plans and launches attacks against its enemies, which includes the United States and other countries (*Id.* at 531:17-24).

Additionally, the ISIS camp roster that was admitted at trial was certainly not required to sustain the jury's conviction on Count Three. For example, putting the roster aside for a moment, the defendant's statements about his fellow ISIS recruits in Iraq receiving "sniper specific training" (*Id.* at 736:21-23) were corroborated by Peshmerga Official No. 1's testimony about "lots of ISIS snipers" being present in the area in which he first encountered the defendant

(*Id.* at 169:21-23). The defendant's statements about some of his fellow ISIS recruits in Mosul, Iraq who were tasked with "armed guard duty" (*Id.* at 562:13-15) at ISIS checkpoints to control the city was corroborated by Kurdish CTD Official No. 1's testimony that that ISIS controls the borders of Mosul with checkpoints, patrols, and "armed people stationed there" (*Id.* 434:14-16).

The defendant's observations of ISIS members possessing or carrying "rifles" and the presence of firearms in every ISIS safe house in which he resided (*Id.* at 564:18-19) was corroborated by Kurdish CTD Official No. 1's testimony about "living in a state of war" (*Id.* at 436:18-19); Col. Arkan's testimony about ISIS taking control of Mosul "by force" (*Id.* 216:9-11); and William Braniff's testimony about ISIS's establishment of an army (*Id.* at 806:1). Testimony from Special Agents Ryan Lamb and Brian Czekala about the ISIS video recovered from the defendant's phone, which showed "a number of individuals brandishing firearms" (*Id.* at 352:3-5), and in particular, holding "what appears to be AK-47 rifles or some kind of variant of a Kalashnikov rifle" (*Id.* at 576:15-17) also corroborated the defendant's eyewitness testimony about the firearms and "so many fighters coming and going" (*Id.* at 564:21-23) given that the defendant received the video, while he was with ISIS, from one of his fellow ISIS members who claimed he was in the footage of the video (*Id.* at 576:18-24; 1054:12-16). Furthermore, the defendant's continuous observations of firearms while he was with ISIS, including in the vehicle that transported him and other ISIS recruits to the first ISIS safe house in Syria, was corroborated by the numerous images stored on the defendant's phones of ISIS fighters with firearms, including "semi or automatic weapons." *See id.* at 1037:5-6; Gov. Ex. 4.

*Fourth*, at trial, the defense "impeached" the reliability of the ISIS documents recovered in Mosul, Iraq by emphasizing on cross-examination "blank" entries in those forms. The Court also allowed the defense to argue "as to what significance it is that somebody else may have put

9

the name Fighter on it," which was, in fact, argued to the jury. Trial Tr. 283:15-19; 1246:9-1247:2. In this regard, the newly discovered document falls within the "merely cumulative or impeaching" prong of the *Chavis* test.

Accordingly, the government submits that the newly discovered document is not material, and certainly would not "probably result in an acquittal at a new trial" given the overwhelming amount of evidence supporting the jury's guilty verdict on each of the three counts. Moreover, based on how the defendant claims he would use the document had it been available during trial, the document is, at best, "merely cumulative" or "merely impeaching." Lastly, the document simply would have buttressed the jury's already swift decision that the defendant and his co-conspirators were fully committed within the machinery of ISIS. The document further demonstrates the defendant's guilt, not his innocence.

## CONCLUSION

For the foregoing reasons, the defendant's arguments are without merit, and his motion for a new trial should be denied.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:      /s/      
    Raj Parekh, Trial Attorney  
    U.S. Department of Justice  
    Counterterrorism Section  
    National Security Division  
    950 Pennsylvania Ave., N.W.  
    Washington, D.C. 20530  
    Phone: (202) 616-2428  
    raj.parekh@usdoj.gov

By:      /s/      
    Dennis M. Fitzpatrick  
    Assistant U.S. Attorney  
    U.S. Attorney's Office  
    Eastern District of Virginia  
    2100 Jamieson Avenue  
    Alexandria, Virginia 22314  
    Phone: (703) 299-3700  
    dennis.fitzpatrick@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2017, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic copy to all counsel of record in this matter.

By:         /s/
Raj Parekh
Special Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700 (telephone)
(703) 837-8242 (fax)
raj.parekh@usdoj.gov