IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 1:16-cr-143 |
| ) | Hon. Liam O'Grady |
| MOHAMAD KHWEIS, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant Mohamad Khweis's motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Dkt. 265. Assuming, without deciding, that Khweis's motion is brought properly, *see* Dkt. 270, at 9–12, it must nonetheless be **DENIED** because there exists no "extraordinary and compelling reason" warranting a reduction to his sentence.

## I. BACKGROUND

Mohamad Khweis was born in the United States and lived here until mid-2015, when he traveled to Syria to join ISIS. Prior to leaving the country, he knew of ISIS's violent ideology and terrorist tactics. Dkt. 270, at 3.

After initially arriving in Turkey, Khweis made his way to Raqqa, Iraq to rendezvous with other ISIS members. *Id.* at 3–4. There, he participated in ISIS's intake process and offered to serve as a suicide bomber. *Id.* at 4. He also undertook ISIS-directed religious training, attended ISIS lectures, watched military videos with fellow ISIS members, funded ISIS's campaign, and cared for wounded ISIS fighters. *Id.* at 4–5. He eventually left Raqqa to travel to

Mosul, Iraq, where he lived for a month. There, he engaged in similar activities. An ISIS camp roster recovered by allied forces in Mosul listed Mr. Khweis's "mission" for ISIS as a "fighter."

Eventually, Khweis relocated to Tal Afar, Iraq. There, he also cared for wounded ISIS fighters. While in Tal Afar, Khweis apparently grew disenchanted with his life fighting for the caliphate; he "came to the realization that he 'didn't want to stay' with ISIS and 'needed to leave.'" *Id.* at 5. Accordingly, he departed ISIS-controlled territory, deleted his contacts and communications with ISIS from one of his phones, and burned two other phones and a laptop. *Id.* at 6. He was then captured by Kurdish Peshmerga fighters near the Syrian border. *Id.* at 6.

After undergoing interrogation in Kurdistan, Mr. Khweis was returned to the United States and prosecuted in this Court for providing and attempting to provide material support to ISIS, and for possessing, using, and carrying firearms in furtherance of a crime of violence in violation of § 924(c). After a six-day jury trial, he was convicted on all counts. Dkt. 246.

Mr. Khweis's § 924(c) conviction (Count 3) was subsequently vacated on Government consent. *United States v. Khweis*, 971 F.3d 453, 464–65 (4th Cir. 2020), *cert. denied*, 2021 WL 1072984 (U.S. Mar. 22, 2021). The Fourth Circuit then remanded Khweis's case for resentencing. Dkt. 270, at 1. Resentencing is expected to occur in the next several months.

Following vacatur of his § 924(c) charge, Khweis filed the instant compassionate release motion after exhausting his administrative remedies under 18 U.S.C. § 3582(c)(1)(A). Dkts. 264, 265. The Government filed an opposition, Dkt. 270, and Khweis replied, Dkt. 271. The motion is now fully briefed and ripe for review.

## II. LEGAL STANDARD

18 U.S.C. § 3582(c)(1)(A) provides in relevant part:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative [remedies] . . . may reduce the term of imprisonment (and may impose a

2

> term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3141(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* Under this statutory scheme, a Defendant must demonstrate that "extraordinary and compelling reasons" exist that warrant a reduction to his sentence, and that "the factors in 18 U.S.C. § 3553(a) allow" for such a reduction. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. High*, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021) ("Thus, under the statute, a defendant becomes eligible for relief only if the court finds that a reduction is both (1) warranted by 'extraordinary and compelling reasons' and (2) 'consistent with applicable policy statements issued by the Sentencing Commission.'").

The Court possesses some flexibility in determining what constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). "[M]edical conditions can, alone, prove sufficiently extraordinary and compelling to justify a sentence modification." *United States v. Feiling,* 453 F. Supp. 3d 832, 841 (E.D. Va. 2020). However, U.S. Sentencing Guideline § 1B1.13 cmt. n.1(A), on which Defendant implicitly relies, *see* Dkts. 265, 271, indicates that a medical condition must be serious enough to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility" to constitute an "extraordinary and compelling reason" warranting relief. *Id.* Courts have interpreted this

3

provision to mean that the COVID-19 pandemic, standing alone, does not entitle a Defendant to compassionate release. *See, e.g., United States v. Thompson,* 2021 WL 37493, at *3 (5th Cir. Jan. 5, 2021); *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Day,* 474 F. Supp. 3d 790, 805 (E.D. Va. 2020); *Feiling,* 453 F. Supp. 3d at 842. Rather, a Defendant must demonstrate (1) particularized susceptibility to a serious medical condition as a result of contracting COVID-19, *and* (2) a particularized risk of contracting the disease at his prison facility. *See United States v. Adamson,* 831 F. App'x 82, 83 (4th Cir. 2020); *United States v. Blevins,* 832 F. App'x 192, 192 (4th Cir. 2020).

### III. DISCUSSION

Mr. Khweis's inability to demonstrate a particularized risk of contracting COVID-19 at his place of incarceration, Cumberland FCI, foils his request for compassionate release. His entire argument hinges on the risk of COVID-19 aggravating his health conditions in prison. *See* Dkt. 265, at 10 ("The Risk Posed by COVID-19 is an Extraordinary and Compelling Reason to Reduce Petitioner's Sentence to Time Served"); *see also id.* at 10–16 (discussing Mr. Khweis's obesity, hypertension, and PTSD). This argument was dubious when initially made, as only "1 inmate and 6 staff [at Cumberland FCI] were . . . [testing] positive for the disease" at the time. *Id.* at 16. Now, Cumberland FCI is reporting *zero* inmates testing positive for COVID-19 out of a total population of over 1,100. The idea that Mr. Khweis faces "particularized risk" of contracting the virus at this facility is simply untenable. *See BOP COVID-19 Cases,* https://www.bop.gov/coronavirus/ (last visited May 20, 2021). No inmate or staff has died from the virus at Cumberland FCI, and 358 inmates and 52 staff have recovered from it. *Id.* All this indicates that the facility has implemented robust prevention and curative measures in response to its earlier outbreak. Mr. Khweis should also take solace in the institution's aggressive

4

vaccination campaign, which will almost certainly keep infections at zero or near-zero levels going forward. *See id.* (reporting 180 full staff inoculations and 410 full inmate inoculations at Cumberland FCI).

Because there exists no extraordinary and compelling reason warranting a reduction to Mr. Khweis's sentence, the Court need not opine on how the § 3553(a) sentencing factors will apply to his case. That will be decided during Defendant's upcoming resentencing, which is scheduled to occur during the coming months. The Court appreciates Mr. Khweis's submission on this issue and will take it under advisement. *See* Dkt. 265, at 17–21.

## IV. DISCUSSION

The Defendant's motion for compassionate release must be **DENIED**. The clerk is **DIRECTED** to send a copy of this Order to Defendant.

It is **SO ORDERED**.

May 24, 2021
Alexandria, Virginia

Liam O'Grady
United States District Judge